UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                   Plaintiff,

                                        Case No.  15-20283
vs.                                HON.  GEORGE CARAM STEEH

BORIS ZIGMOND, *et al.*,

                   Defendants.

_____/

ORDER DENYING DEFENDANT ZIGMOND'S MOTION
TO DISMISS THE INDICTMENT, OR IN THE ALTERNATIVE,
<u>SUPPRESS WIRETAP COMMUNICATIONS (DOC. 202)</u>

Defendant Boris Zigmond is charged with conspiracy to distribute

and possess with intent to distribute controlled substances in violation of 21

U.S.C. §§ 841(a)(1), 846, and conspiracy to commit money laundering in

violation of 18 U.S.C. § 1956(h).  This matter is presently before the Court

on Zigmond's Motion to Dismiss the Indictment, or in the alternative,

Suppress the Wiretap Communications.  (Doc. 202).  Oral argument was

held on July 13, 2017.  For the reasons stated below, Zigmond's motion is

DENIED.

## I. Background

On November 5, 2014, the government filed an application, along with a supporting affidavit, to authorize the interception of communications between Rodney Knight and numerous individuals, including Zigmond, regarding an investigation of a target telephone (TTI) allegedly belonging to Knight.  District Judge Robert H. Cleland issued an authorization order on the same date.  On February 25, 2015 the Government applied to intercept communication of a second target telephone (TTII) purportedly belonging to Zigmond.  District Judge Mark A. Goldsmith issued an authorization order on the same date.  Both applications included supporting affidavits.  The affidavits and authorization orders each discussed minimization procedures.  Zigmond challenges sufficiency and scope of these documents.

## II. Legal Standard

### A. The Fourth Amendment

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and states that "no warrants shall issue, but upon probable cause, supported by oath or affirmation. . . ."  U.S. CONST. amend. IV.  Officers, therefore, "must obtain a valid warrant and conduct the search

in a reasonable manner." *Baranski v. Fifteen Unknown Agents of Bureau of Alcohol, Tobacco & Firearms*, 452 F.3d 433, 445 (6th Cir. 2006).  A search is unreasonable where it is "out of proportion to the end sought." *United States v. Costner*, 153 F.2d 23, 26 (6th Cir. 1946).  "There is no formula for the determination of reasonable.  Each case is to be decided on its own facts and circumstances."  *Id.* (internal quotations and citations omitted).  The Court shall look at "the totality of the circumstances," *Ohio v. Robinette*, 519 U.S. 33, 39 (1996), and consider "whether what was done and found bears a reasonable relation to the authority then possessed and exercised or transcends it to become oppression."  *Costner*, 153 F.2d at 26.

## B. The Sixth Amendment

The Sixth Amendment protects a defendant's right to effective assistance of counsel, which is "the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing."  *United States v. Cronic*, 466 U.S. 648, 654 (1984).  The right to counsel "does not attach until the initiation of adversary judicial proceedings," whether "by way of formal charge, preliminary hearing, indictment, information, or arraignment."  *United States v. Gouveia,* 467 U.S. 180, 188 (1984) (quoting *Kirby v. Illinois,* 406 U.S. 682, 689 (1972)).

## C. Title III of the Omnibus Crime Control and Safe Streets Act of 1968

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.*, (Title III), requires "each application for an order authorizing or approving the interception of a wire, oral, or electronic communication" to include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  28 U.S.C. § 2518(1)(c).  *See also* 28 U.S.C. § 2518(3)(c) (requiring the judge approving a wiretap to determine that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or too be too dangerous.").  "Any aggrieved person in any trial, hearing, or proceeding in or before any court . . . may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that – (i) the communication was unlawfully intercepted; (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval."  28 U.S.C. § 2518(10)(a).

### III. Analysis

## A. The Fourth Amendment

Zigmond raises three challenges based upon the Fourth Amendment. Zigmond first asserts that the Government made material misstatements and omissions to the supervising court.  A defendant may move to suppress evidence by challenging a warrant affidavit on the basis that it contains a false statement.  *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).  Evidence shall be suppressed if the affidavit's remaining content is insufficient to establish probable cause.  *Id.* at 156.  A defendant may raise a similar challenge to statements and omissions made to the court that authorized a wiretap.  *United States v. Ippolito*, 774 F.2d 1482, 1484-85 (9th Cir. 1985).

The Government's affidavits in support of its wiretap applications each include 8 pages dictating minimization procedure, including:

- Meeting with all monitoring agents to discuss the requirements of minimization before interceptions begin;
- Providing all monitoring agents with a memorandum regarding minimization and a copy of the court order authorizing interception;
- Posting a copy of that memo and order at the listening site; and
- Requiring all monitoring agents to sign a form indicating that they read the affidavit, the court order authorizing interception, and the minimization memorandum, and that they are familiar with the contents of the order and will intercept communications in compliance with that order.

The affidavit notes that special attention will be paid to minimizing

privileged communications.  For example, when discussing text messages,

the affidavit states that messages that are not criminal in nature will be

minimized and not accessed by other members of the investigative team.  If

a message appears to be privileged, it will be marked privileged and

secured from access by other members of the investigative team.  If a text

is relevant to the investigation or otherwise criminal in nature, it will be

marked non-minimized or pertinent and may be shared with the other

agents and monitors involved in the investigation.  Messages marked

minimized or privileged will not be disseminated to the investigative team.

The affidavit states that these requirements "will be strictly followed."

Zigmond states that the Government represented to the supervising

court that it would minimize privileged calls, but made a misstatement

because it failed to minimize calls that are protected under the attorney-

client privilege.  He further argues that the Government's monitoring team

shared these privileged calls with the investigative team, and omitted the

disclosure of this information.  The Government denied Zigmond's

allegations at oral argument.  It proffered that Stephen Hiyama, the

Assistant United States Attorney who led the filter team, an agent on the

filter team, and the supervising agent of the investigative team were

present to testify that privileged calls were not shared with the investigative team.

The Court finds that the Government's minimization efforts were not unreasonable. This investigation involved numerous defendants for a widespread drug conspiracy. The Government is given latitude when conducting wiretaps in these situations. *Scott v. United States*, 436 U.S. 128, 142 (1978) ("when the investigation is focusing on what is thought to be a widespread conspiracy more extensive surveillance may be justified in an attempt to determine the precise scope of the enterprise."); *United Stated v. Torres*, 908 F.2d 1417, 1424 (9th Cir. 1990) (stating that when wire interceptions concern a drug ring "the need to allow latitude to monitor agents is paramount."); *United States v. Gray*, 372 F. Supp. 2d 1025, 1044 (N.D. Ohio 2005) ("courts tolerate more extensive surveillance in conspiracy cases") (internal quotations and citations omitted). Further, calls intercepted on TTI revealed that Zigmond may be communicating with attorneys to perpetuate fraud in connection with fighting the forfeiture of $15,000, purportedly belonging to Zigmond, that was seized by the Southfield police. As a result, the Government had reason to believe that calls intercepted on TTII between Zigmond and attorneys may be criminal in nature, and therefore, not covered by the attorney-client privilege. The

Government also took precautions to minimize privileged calls by thoroughly instructing monitoring agents on the minimization procedures and requiring their acknowledgement of the procedures outlined in the affidavit, order, and memorandum.

Finally, even if some calls protected by attorney-client privilege were improperly minimized, Zigmond has not shown that his defense was prejudiced.[1]  Zigmond attempts to show prejudice through three acts – the allegation that the investigative team reviewed privileged calls to learn his strategy and prosecute its case; the Government accidentally providing his co-defendants' attorneys with all of the TTII wiretap recordings, including privileged calls; and the temporal proximity between interception of privileged calls and Zigmond's arrest.  Each attempt fails.  The Government proffered that its investigative team did not receive the privileged calls.  Although a United States Attorney's Office paralegal uploaded privileged calls to a discovery database accessible by attorneys representing Zigmond's co-defendants, the mistake was corrected.  The privileged calls were removed from the discovery database and the defense attorneys who had accessed the privileged calls before their removal agreed to destroy

---

[1] Zigmond's briefs discuss prejudice only in the context of his Sixth Amendment arguments.  The Court, however, may consider prejudice in determining whether to suppress evidence collected from a wiretap that allegedly violated the Fourth Amendment.  *See Gray*, 372 F. Supp. 2d. at 1047.

the recordings.  Finally, Zigmond asserts that the Government listened to

privileged calls and used them to prosecute because he was arrested on a

complaint, rather than an indictment, filed shortly after the Government

intercepted his communications with a tax attorney and various criminal

attorneys.  Zigmond does not offer evidence to substantiate this allegation.

He merely asks the Court to conclude, without discussing the nature of the

calls and their connection to this case or mentioning any specific timeline,

that his arrest illustrates that the Government listened to privileged calls.  At

oral argument, Zigmond's attorney conceded that he cannot show that the

Government used the privileged calls to further its case.  While such a task

is admittedly difficult, Zigmond's current arguments are insufficient to show

prejudice.

Zigmond relies on *United States v.* Renzi, 722 F. Supp. 2d. 1100 (D.

Ariz. 2010) to argue that the Government violated the Fourth Amendment

by seizing evidence outside the scope of the court's authorization order.  In

*Renzi*, a federal agent seeking a wiretap order represented to the

supervising court that all attorney-client privileged conversations would be

minimized.  *Id.* at 1104.  The supervising court issued an order directing the

government to "minimize all such interceptions in accordance with Title III."

*Id.* at 1105.  The government broke the court order by failing to minimize

privileged calls and the court suppressed the entire wiretap.  *Id.* at 1118.

Zigmond concedes that, unlike *Renzi*, the authorization orders here

do not explicitly address monitoring privileged communications between

Zigmond and his attorneys.  He asserts, however, that the Government

was required to minimize privileged calls because it represented that it

would, and because the court orders required the Government to comply

with the minimization procedures in Title III.  The former assertion fails.  As

described above, the Court finds that the Government minimization efforts

were not unreasonable.  Further, the Government did not violate the

minimization procedures in Title III.  The authorization orders require the

Government to intercept wire communications "in such way as to minimize

the interception of communications not otherwise subject to interception

under Chapter 119 of Title 18 of the United States Code."  (Doc. 207-4 at

PageID 1507).  At oral argument, Zigmond's attorney stated that Title III

requires the minimization of all calls that are not authorized to be

intercepted, including attorney-client calls.  He concludes, therefore, that

despite the lack of a specific prohibition, the authorization orders'

generalized language regarding Title III creates the same prohibition as in

*Renzi*, which the Government violated by failing to minimize attorney-client calls.

"Title III authorizes the interception of all pertinent communications." *Renzi*, 722 F. Supp. 2d at 1126 (citing 18 U.S.C. 2518(3)(a)-(b), (4)(c)). No "otherwise privileged wire or oral communication intercepted in accordance with or in violation of the provisions of this chapter shall lose its privileged character." 18 U.S.C. § 2517(4). The statute, therefore, "contemplates that privileged communications will be intercepted with appropriate limitations on use and disclosure." *Renzi*, 722 F. Supp. 2d. at 1126. "Thus, while the use and disclosure of privileged calls is addressed by the statute, there is no statutory requirement that attorney-client privileged calls be minimized, *per se*." *Id.* Thus, the Government is not required to minimize attorney-client calls under the authorization orders or Title III, and minimizing attorney-client privileged calls does not amount to seizing evidence beyond the scope of the authorization order.

Finally, Zigmond argues that the Government executed the search in an unreasonable manner by recording calls that it knew or should have known may be related to attorney representation. This argument fails. The Government had reason to believe that Zigmond was contacting attorneys to perpetuate fraud regarding the seizure of $15,000 allegedly connected to

the charged drug conspiracy. It was not unreasonable for the monitoring team to review these calls.

## B. The Sixth Amendment

Zigmond argues that the Government violated the Sixth Amendment by recording his conversations with counsel. His argument fails for two reasons. First, his Sixth Amendment right to counsel had not attached at the time of the wiretap. Zigmond had not been formally charged, he had not appeared for a preliminary hearing, the Government had not filed an indictment or information, and he had not be arraigned. Further, the Court finds that the Government's wiretap investigation does not signal the initiation of adversarial proceedings. It was merely an investigation, not an accusation.

Moreover, Zigmond cannot establish a violation of the Sixth Amendment right to counsel ensuing from government surveillance. To do so, he "must not only show that conversations with an attorney were surreptitiously monitored, but must also show that the information gained was used to prejudice the claimant's defense in his criminal trial." *Sinclair v. Schriber*, 916 F.2d 1109, 1112 (6th Cir. 1990) (citing *Weatherford v. Bursey,* 429 U.S. 545, 552 (1977)). Zigmond has not shown prejudice. *See infra.*

- 12 -

**C. Title III of the Omnibus Crime Control and Safe Streets Act of 1968**

Defendant argues that the Government violated Title III by failing to meet the requirements contained in 28 U.S.C. § 2518(1)(c).  The Court, however, finds that the Government satisfied the challenged elements of Title III.  The two judges that issued the authorization orders reviewed the affidavits and ruled that the Government adequately established that normal investigative procedures have been tried and failed, reasonably appear unlikely to succeed if continued, or reasonably appear unlikely to succeed if tried.  Courts reviewing the validity of an electronic surveillance order "will accord 'great deference' to the determinations of the issuing judge."  *United States v. Corrado*, 227 F.3d 528, 539 (6th Cir. 2000).  "Thus, the fact that a later trial judge or reviewing court may feel that a different conclusion was appropriate does not require, nor even authorize, the suppression of evidence gained through such a warrant." *United States v. Alfano*, 838 F.2d 158, 162 (6th Cir. 1988).  Further, the Sixth Circuit "has clarified that the purpose of the necessity requirement 'is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques.'"  *Corrado*,

227 F.3d at 539 (quoting *United States v. Landmesser,* 553 F.2d 17, 20 (6th Cir.1977).

The wiretap affidavits are 70 and 110 pages, and "include a detailed description of the evidence that had already been obtained as well as a separate section detailing the aims of and need for continued electronic surveillance." *Id.* These justifications include facts regarding the complexity of the alleged conspiracy. On these facts, we do not believe that the issuing judges abused their discretion in granting the Government's applications.

## IV. Conclusion

For the reasons stated above, Zigmond's motion is DENIED.

IT IS SO ORDERED.

Dated: July 25, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 25, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---

- 14 -